1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DESHAWN ROBERTS,

Case No.  1:20-cv-01206-JLT-HBK (HC)

12            Petitioner,

FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS AND TO DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY[1]

13        v.

14   JOSIE GASTELO,

FOURTEEN-DAY OBJECTION PERIOD

15            Respondent.

(Doc. No. 1)

16

17        Petitioner Deshawn Roberts, a state prisoner proceeding pro se, has pending a petition for

18   writ of habeas corpus under 28 U.S.C. § 2254.  (Doc. No. 1).  The Petition raises one ground for

19   relief: whether the trial court erred when it exercised its discretion and declined to strike the

20   vicarious gun-use enhancement under California Penal Code § 12022.53(h).  (*See generally id.*).

21   For the reasons set forth below, the undersigned recommends that the district court deny

22   Petitioner any relief on his Petition and decline to issue a certificate of appealability.

23                                    **I.  BACKGROUND**

24        **A.  Procedural History**

25        Roberts initiated this case on August 21, 2020 by filing the instant Petition.  (Doc. No. 1).

26   On November 17, 2020, the case was reassigned to the undersigned.  (Doc. No. 8).  On December

27

28   _____
[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

1, 2020, the Court ordered Respondent to respond to the petition.  (Doc. No. 9).  On December

21, 2020, Respondent lodged the pertinent state court record, and on December 29, 2020

Respondent filed an answer.  (Doc. Nos. 14, 15).  On January 25, 2021, Roberts filed a reply.

(Doc. No. 16).  The matter is deemed submitted on the record before the Court.

**B.  Facts Based Upon the Record**

In 2015, a Kern County jury convicted Roberts of the following charges:  premeditated

attempted murder in which a principal intentionally and personally discharged a firearm,

proximately causing great bodily injury (count 1); permitting another person to discharge a

firearm from a vehicle (count 2); felon in possession of a firearm (count 3); carrying a

concealable firearm in a vehicle while an active participant in a criminal street gang (count 4);

and being an active participant in a criminal street gang (count 5).  (Doc. No. 14-21 at 9-13, 23-

26; Doc. No. 14-29 at 2).  Counts 1 through 3 were found to have been committed for the benefit

of or in association with a street gang.  (*Id.*).  Roberts was sentenced to a total unstayed prison

term of life in prison with the possibility of parole after seven years for the premeditated

attempted murder, plus 25 years to life for the firearm enhancement.  (*Id.*)

On direct appeal, the state appellate court affirmed the trial court judgment.  *People v.*

*Roberts*, No. F071777, 2017 WL 4803813 (Cal. Ct. App. Oct. 25, 2017).  Subsequently,

Petitioner was granted rehearing to determine whether California Senate Bill 620, which amended

California Penal Code § 12022.53(h) to provide the sentencing court discretion to strike firearm

enhancements in the interest of justice, applied in his case (Doc. No. 14-27), and the matter was

remanded for further proceedings on that issue.  *People v. Roberts*, No. F071777, 2018 WL

286744 (Cal Ct. App. Jan. 4, 2018) (confirming original holdings and remanding only with

respect to the applicable sentencing enhancement); (Doc. No. 14-29).  On remand, the trial court

declined to exercise its discretion to strike the firearm enhancement imposed pursuant to

California Penal Code § 12022.53(d), (e)(1), and the California Court of Appeal affirmed.  *People*

*v. Roberts*, No. F077442, 2019 WL 3283012 (Cal Ct. App. Jul. 22, 2019); (Doc. No. 14-37).

The Court sets forth below the pertinent facts of the underlying offenses, as summarized

by the California Court of Appeal.  A presumption of correctness applies to these facts.  *See* 28

2

U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015).

## FACTS AND PROCEDURAL HISTORY

### DEFENDANT'S OFFENSES, CONVICTIONS, AND SENTENCE[2]

[FN 2] The facts are taken from this court's opinion in People v. Roberts (Jan. 4, 2018, F071777) [nonpub. opn.], which is contained in the clerk's transcript of the present appeal.

On the evening of April 2, 2014, a member of the Country Boy Crip criminal street gang was wounded in a drive-by shooting that took place in front of a market that was a well—known hangout of the gang. A witness described the vehicle from which the shots were fired as a gray or silver Chevrolet Impala. Store video showed a silver vehicle drive by and turn the corner. Two minutes later, the car drove past again, the shooting occurred, and the car sped off. Three spent Winchester brand .40-caliber Smith and Wesson shell casings were found in the roadway adjacent to the victim's location when he was shot.

The next day, police located the vehicle, which was being driven by defendant and which had been rented by his girlfriend. Two spent Winchester brand .40-caliber Smith and Wesson shell casings were found in the car. They and the three spent casings found at the scene of the shooting were determined to have been fired from the same gun.

Under questioning by detectives, defendant first denied being involved in the shooting and said his vehicle was not there. He subsequently said his cousin, Marlon Burch, asked to use the car. Defendant was reluctant to give permission, but Burch grabbed the keys and left. Someone defendant knew as "Maniac" got in the car with Burch. When Burch returned, he told defendant what had happened. Burch said he was the shooter, and that he went to a store in "the country" and was aiming for "anybody that was out there." Eventually, defendant admitted he was the driver. He took Burch to where Burch got the gun, then Burch told him to go to the market. Once there, Burch fired several times. Defendant and Burch discussed what was going to happen before they went. Defendant "just gave in" when Burch wanted to go do the shooting.

At trial, defendant testified that Burch had taken defendant's car keys without defendant's permission, and that defendant did not know about the shooting until after it happened. In the portion of his interview with detectives that was video recorded, he admitted being the driver because he thought this was part of a plan hashed out off camera whereby defendant would involve himself as an eyewitness so police could arrest Burch, and defendant would be cited and released for being an unlicensed driver, a misdemeanor.

Defendant was convicted of premeditated attempted murder in which a principal intentionally and personally discharged a firearm,

3

proximately causing great bodily injury (§§ 187, subd. (a), 189, 664, 12022.53, subds. (d) & (e)(1); count 1), permitting another person to discharge a firearm from a vehicle (§ 26100, subd. (b); count 2), being a felon in possession of a firearm (§ 29800, subd. (a)(1); count 3), carrying a concealable firearm in a vehicle while an active participant in a criminal street gang (§ 25400, subd. (c)(3); count 4), and being an active participant in a criminal street gang (§ 186.22, subd. (a); count 5). Counts 1 through 3 were found to have been committed for the benefit of or in association with a criminal street gang. (§ 186.22, subd. (b)(1).)

Defendant was sentenced to a total unstayed prison term of life in prison with the possibility of parole after seven years for the premeditated attempted murder, plus 25 years to life for the firearm enhancement. At the time of sentencing, the trial court lacked discretion to strike that enhancement. (§ 12022.53, former subd. (h).)

### *THE FIRST APPEAL AND HEARING UPON REMAND*

In our original opinion, we rejected defendant's claims of prejudicial prosecutorial misconduct, trial court bias, and erroneous admission of defendant's statements to police. Accordingly, we affirmed. We subsequently granted rehearing to determine whether the amendment to section 12022.53, enacted by Senate Bill No. 620 (Reg. Sess. 2017-2018) (Stats. 2017, ch. 682, § 2) (Senate Bill No. 620) and effective January 1, 2018, applied to defendant. The Attorney General conceded it did, but disputed the propriety of a remand. Because defendant was not the actual shooter and the victim was not killed, we were unable to conclude it would be an abuse of discretion to strike the firearm enhancement, and we could not say, from the court's comments at sentencing, that it necessarily would have imposed the enhancement if it could have exercised its discretion not to do so. Accordingly, we remanded the matter for further proceedings.

At the outset of the hearing upon remand, the trial court stated it had read notes relative to the actual trial, the appellate opinion, the prosecution's sentencing statement on remittitur, and the two-part probation report.[3] The court stated its recollection was refreshed concerning the case. The court also confirmed, as something it felt it should consider for purposes of exercising its discretion in defendant's case, that Burch was never prosecuted. The prosecutor explained that defendant's testimony as a witness against Burch would be essential and, given defendant's statements to detectives and his testimony in court, "that became essentially a very unlikely proposition as far as the prosecution against" Burch.

> [FN 3] The court noted the first part was a report dated November 17, 2014, which was prepared following a negotiated disposition that ultimately fell through. The second part was dated June 2, 2015, following defendant's convictions at trial.

With respect to the potential resentencing, defense counsel argued defendant was not the actual shooter and was very cooperative with investigators, even identifying the shooter for them. Counsel asserted that a sentence of seven years to life was sufficient punishment for being a driver in a shooting where the victim was fully recovered, and where defendant's participation was minimal and the result of peer pressure and defendant "didn't really do anything to harm anybody in this case."

The prosecutor responded that defendant, in his statements to detectives and his trial testimony, gave numerous variations of what took place. The prosecutor asserted the case involved an Eastside Crip member who agreed to go to a rival gang's territory for the sole purpose of targeting an African-American who fit the Country Boy Crip profile and was at a Country Boy Crip hangout. The prosecutor argued defendant had a choice, and his participation was not minimal when the shooting would not have occurred had he not agreed to take Burch to commit the shooting. The prosecutor concluded: "We have a situation where we have an obviously gang-related drive-by shooting in which the driver was well aware of the purpose of this mission of going to Country Boy Crip territory. He was well aware of what was going to happen. He slowed down and made sure that B[u]rch had a good shot at [the victim], multiple shots were fired. [The victim] takes a bullet to the chest and happily does not die. But the reason for [section] 12022.53's increased punishments for firearms related felonies, and particularly in this case gang-related firearms related felonies are so in line with what the facts of this case are that if that increased liability doesn't apply here, it is hard to imagine where it would properly apply. So certainly there may be situations where the Court would exercise its discretion in some scenarios to reduce the punishment by striking that enhancement, but I cannot see how it would be appropriate in this case."

Defense counsel argued this was the type of case for which the statutory amendment was meant, as defendant was not the shooter, never had the firearm, and never planned or intended the shooting but rather was influenced by a friend. Counsel asserted Burch would have committed the shooting even if defendant refused to drive him around. Counsel stated defendant was "paying the price for being really stupid ...." He disputed that defendant slowed down so Burch could shoot, stating instead that there was a traffic light, and Burch saw someone crossing the street and shot him. Counsel reiterated that there was no plan to shoot someone, and seven years to life was adequate punishment.

The court stated that exercising its discretion whether to dismiss the firearm enhancement in the interest of justice meant it had to decide "whether this is a just sentence for this particular crime such that the sentence previously imposed should stand or not." It found the fact defendant was not the actual shooter something that arguably could be considered in defendant's favor. It acknowledged the victim did not die, although it did not give that fact much weight in mitigation, because at issue was the act of attempting to kill someone. In addition, the act in this case was found to have been

committed with premeditation and deliberation, which, the court concluded, was supported by the evidence, particularly defendant's statement to detectives that he knew what he and Burch were going to do and he involved himself in the situation. Thus, the court found, there was some planning and preparation. The court did not recall there being a stop sign or stop light that defendant obeyed and that was when the shooting occurred; rather, the car drove by once before the shooting. With respect to defendant, the court found he had a minimal record at the time of the offense, with a juvenile offense for misdemeanor second degree burglary, then a felony drug conviction in 2008 for what now would be a misdemeanor. The court also observed defendant was 26 years old and a high school graduate. The court found those facts to be favorable to defendant.

The court then stated:

"I guess what I'm struggling with the most ... is whether or not actually [defendant] played a lesser or minor role in this particular incident. And I'm struggling with that idea in this particular case because ultimately this was going to be a drive-by shooting.

"Two people got together and this was what the plan was to go out and just shoot somebody for ... apparently no other reason than a gang-related reason, ... someone not belonging to the same gang. So drive-by shootings are ... just horrible in the sense that people get killed. And a lot of times innocent people get killed that weren't even the intended amongst the target pool ... of other gang members or whatever people that are just there get shot and get killed because of the nature of what a drive-by shooting is, which is essentially drive up on suspected people and start shooting, see who you could kill or hit somebody. So they are horrific crimes that have horrible, horrible results and that people get killed. I think most of the time ... there is no reason for them whatsoever than some sort of gang-related reason, which is certainly not anything that would be mitigating .... But I do understand what takes place, and I think that was the motive here was the gang activity between the two gangs — the Eastside Crips and the ... Country Boy Crips.

"So you can't have a drive-by shooting without a driver; a lot of times it is the same person. But when it is not the same person, essentially they're acting as one for purposes of committing the crime, and essentially that is what happened here. He's driving the car. He's driving it for the sole purpose of allowing somebody else to shoot willy nilly out at people and with obviously a likelihood somebody would get hit and somebody got killed, which is certainly what happened in this place; somebody was struck, and he didn't die. But it is a horrific, horrific crime which can only be accomplished ... with a gun. The enhancement is designed to punish the crimes that are committed with

6

firearms or [*sic*] severely then [*sic*] the crime itself. And in this case, based on the totality of the circumstances of the offense, [defendant's] participation, which obviously was necessary to accomplish the crime and knowledge of what was going to take place, I simply don't find that this would be a case where it would be appropriate for me to exercise my discretion and strike the enhancement.

"Consequently, in exercising my discretion, I'm deciding not to strike or dismiss the enhancement. The sentence previously imposed as to all the counts will stand. There will be no resentencing as a result of this Court's decision at this time.".

(Doc. No. 14-37 at 2-7); *Roberts*, 2019 WL 3283012, at *2-4.

## II.  APPLICABLE LAW

### A.  AEDPA General Principles

A federal court's statutory authority to issue habeas corpus relief for persons in state custody is set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  AEDPA requires a state prisoner seeking federal habeas relief to first "exhaus[t] the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  If the state courts do not adjudicate the prisoner's federal claim "on the merits," a *de novo* standard of review applies in the federal habeas proceeding; if the state courts do adjudicate the claim on the merits, then the AEDPA mandates a deferential, rather than *de novo*, review.  *Kernan v. Hinojosa*, 136 S. Ct. 1603, 1604 (2016).  This deferential standard, set forth in § 2254(d), permits relief on a claim adjudicated on the merits, but only if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and intentionally difficult to satisfy. *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018); *White v. Woodall*, 572 U.S. 415, 419 (2014).

"Clearly established federal law" consists of the governing legal principles in the decisions of the United States Supreme Court when the state court issued its decision.  *White*, 572

U.S. at 419.  Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law.  28 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  *Williams v. Taylor*, 529 U.S. 362, 407, (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  The petitioner must show that the state court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 103.

When reviewing a claim under § 2254(d), any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 571 U.S. 12, 18 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)).

As discussed earlier, for the deferential § 2254(d) standard to apply there must have been an "adjudication on the merits" in state court.  An adjudication on the merits does not require that there be an opinion from the state court explaining the state court's reasoning.  *Richter*, 562 U.S. at 98.  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

8

of any indication or state-law procedural principles to the contrary." *Id*. at 99.  "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id*. at 99-100.  This presumption applies whether the state court fails to discuss all the claims or discusses some claims but not others. *Johnson v. Williams*, 568 U.S. 289, 293, 298-301 (2013).

  While such a decision is an "adjudication on the merits," the federal habeas court must still determine the state court's reasons for its decision in order to apply the deferential standard. When the relevant state-court decision on the merits is not accompanied by its reasons,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.  But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  The federal court "looks through" the silent state court decision "for a specific and narrow purpose—to identify the grounds for the higher court's decision, as AEDPA directs us to do." *Id*. at 1196.

> When . . . there is no reasoned state-court decision on the merits, the federal court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 562 U.S. at 102.  If such disagreement is possible, then the petitioner's claim must be denied. *Ibid*.

*Sexton*, 138 S. Ct. at 2558.

### III.  ANALYSIS

  For purposes of reviewing Petitioner's claims, the Court considers the last reasoned decision on Petitioner's claims—that of the California Court of Appeal.

**A.  Ground One: Trial Court Declining to Strike Firearm Enhancement**

  **1.  Background**

Roberts argues the trial court's finding was an abuse of discretion and violates his right to

due process under the Fourteenth Amendment.  (Doc. No. 1 at 23-33).  Specifically, Roberts contends that the trial court abused its discretion when it declined to strike the firearm enhancement under Penal Code § 12022.53(h) because:  (1) the court did not focus on the difference between an attempted and a premeditated killing; (2) the court did not consider all the circumstances surrounding the offender including that he was not the shooter, he had a minimal prior record, and he confessed to his involvement on the day of his arrest; and (3) the court did not consider the public interest because a principal reason for passing Senate Bill 620 is to "protect taxpayers for lengthy incarcerations that have little value as deterrents to crime."  (*Id*. at 28-33).

In its Answer, Respondent cites the Court of Appeal's finding that the trial court did not abuse its discretion, and further argues that claimed errors in state law sentencing do not present a federal question.  (Doc. No. 15 at 4).  Respondent also notes that Petitioner did not fairly present a claim that "the Constitution itself barred imposition of the enhancement [].  And an attempt to make a federal-law issue out of a state-law issue necessarily fails."  (*Id*. at 5).

In reply, Petitioner argues his claim was properly presented to the California Supreme Court for review; the appellate court decision is "of no consequence whatsoever" as it was "depublished"; the trial court abuse of discretion violated Petitioner's right to due process under the Fourteenth Amendment; and review of the discretionary sentence is "necessary to settle important questions of law, that are not barred, nor have they been properly addressed in any state court."  (Doc. No. 16 at 2-3).

### 2.  State Appellate Court Decision

In rejecting the claim that the trial court abused its discretion by failing to strike the firearm enhancement, the state appellate court reasoned as follows:

#### DISCUSSION

Defendant contends the trial court's decision constituted an abuse of discretion. He says the court failed adequately to consider the offense, the offender, and the public interest. We disagree.

Section 12022.53, subdivision (h) provides, in pertinent part: "The court may, in the interest of justice pursuant to Section 1385 ..., strike or dismiss an enhancement otherwise required to be imposed

by this section." "When determining whether a dismissal will further the interests of justice, the court must consider both the constitutional rights of the defendant and the interests of society, as represented by the prosecution. [Citation.]" (*People v. Thorbourn* (2004) 121 Cal.App.4th 1083, 1088; accord, *People v. Williams* (1998) 17 Cal.4th 148, 159; *People v. Orin* (1975) 13 Cal.3d 937, 945.) Furthermore, a trial court's sentencing discretion "must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' [Citation.]" (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)

With respect to the offense, defendant argues the trial court failed to consider that there is a difference between the actual killer and one who aids and abets an attempted killing. He complains that the court imposed the same sentence via the firearm enhancement — 25 years to life — as should have been imposed on the actual shooter, who was never prosecuted. With respect to the offender, defendant says the court gave no consideration to the fact defendant voluntarily acknowledged wrongdoing at an early stage of the proceedings. Last, defendant says the trial court failed to consider the public interest, in that the court did not consider Senate Bill No. 620's primary purpose of protecting taxpayers from paying for lengthy incarcerations that have little deterrent value.

"In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citation.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377; see *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978.)

Defendant has failed to demonstrate the trial court's decision was arbitrary or irrational. Defendant's selective quotations notwithstanding, the record clearly shows the trial court was aware defendant's conviction was for attempted murder, not murder; defendant was an aider and abettor; and defendant acknowledged wrongdoing to detectives and also entered into a negotiated disposition early in the proceedings. The court was not required expressly to address each point. (See *People v. Carpenter* (1999) 21 Cal.4th 1016, 1046; see also *People v. Johnson* (1988) 205 Cal.App.3d 755, 758; *People v. White* (1981) 117 Cal.App.3d 270, 280, disapproved on another ground in *People v. Scott* (1994) 9 Cal.4th 331, 353, fn. 16; Cal. Rules of Court, rule 4.409.)

As for the trial court's alleged failure to consider Senate Bill No. 620's purpose, that legislation does not exist in a vacuum such that the purpose of section 12022.53 is irrelevant. The California Supreme Court has stated: "The legislative intent behind section 12022.53 is clear: 'The Legislature finds and declares that substantially longer prison sentences must be imposed on felons who use firearms in the commission of their crimes, in order to protect our citizens and to deter violent crime.' [Citation.] With respect to aiders and abettors, ... section 12022.53, subdivision (e)(1), 'is expressly drafted to extend the enhancement for gun use in any enumerated serious felony to gang members who aid and abet that offense in furtherance of the objectives of a criminal street gang.' [Citation.] This subdivision provides a 'clear expression of legislative intent' [citation] to 'severely punish aiders and abettors to crimes by a principal armed with a gun committed in furtherance of the purposes of a criminal street gang. It has done so in recognition of the serious threats posed to the citizens of California by gang members using firearms.' [Citation.]" (*People v. Garcia* (2002) 28 Cal.4th 1166, 1172.)

In enacting Senate Bill No. 620, the Legislature did not repeal section 12022.53 or render it completely inapplicable to aiders and abettors. Rather, the Legislature merely gave trial courts the discretion to strike the firearm enhancement in appropriate cases where doing so will further the interests of justice. We will not presume, simply because the trial court did not mention the legislative purposes of Senate Bill No. 620, that the court was unaware of or failed to consider them. To the contrary, "[o]n appeal, we presume that a judgment or order of the trial court is correct, ' ' "[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' [Citation.]" (*People v. Giordano* (2007) 42 Cal.4th 644, 666.) Moreover, " ' "a trial court is presumed to have been aware of and followed the applicable law. [Citations.]" ' [Citation.]" (*In re Julian R.* (2009) 47 Cal.4th 487, 499.)

Defendant fails to persuade us that the trial court did not consider all relevant factors in reaching its decision. Rather, he simply presents information and argument from which a different conclusion reasonably could be drawn. That reasonable people might disagree or reach a conclusion contrary to that of the lower court does not mean that court abused its discretion. Because that court's ruling is neither arbitrary nor unreasonable, defendant is not entitled to a reversal.

(Doc. No. 14-37 at 7-10); *Roberts*, 2019 WL 3283012, at *4-5.

### 3. Roberts is Not Entitled to Relief on Ground One

To the extent Roberts claims that the Court of Appeal made an error in its determination of state law, his claim is not cognizable on habeas review. "The habeas statute 'unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the

ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (internal citations omitted).  Thus, "'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (internal citations omitted); *Swarthout*, 562 U.S. at 219 ("[F]ederal habeas corpus relief does not lie for errors of state law.").  A challenge to the provisions of a state sentencing law does not generally state a federal habeas claim.  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Miller v. Vasquez*, 868 F.2d 1116, 1118-19 (9th Cir. 1989).  Rather, a federal habeas court is bound by the state court's determination concerning the provisions of state law.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.")).

Petitioner's sole ground for relief is that the trial court abused its discretion when it declined to strike the firearm enhancement under Penal Code § 12022.53(h).  (Doc. No. 1 at 23-33).  Because this Court must defer to the state court's determination that no state sentencing error occurred, Petitioner does not state a cognizable federal habeas claim.  *See Harris v. Frauenheim*, 2021 WL 6051316, at *13 (E.D. Cal. Dec. 21, 2021) ("Whether Petitioner's gun use enhancement should have been stricken pursuant to [Senate Bill 620] is an issue of state law that is not cognizable in federal habeas corpus."); *Roberts v. Pfeiffer*, 2022 WL 18636865, at *13 (C.D. Cal. Oct. 4, 2022) (petitioner's claim that trial court abused discretion by failing to strike gun enhancement was not cognizable on federal habeas review); *Williams v. Borg*, 139 F.3d 737, 740 (9th Cir. 1998) (federal habeas relief is available "only for constitutional violation, not for abuse of discretion").

Moreover, Petitioner may not, as he attempts to do here, "transform a state-law issue into a federal one merely by labeling it a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).  In rare circumstances, a misapplication of state sentencing law can be "so arbitrary or capricious as to constitute an independent due process" violation. *Richmond v. Lewis*, 506 U.S. 40, 50 (1992) (on federal habeas review, the question "is not whether the state sentencer

1    committed state-law error," but whether the sentence imposed on the petitioner is "so arbitrary

2    and capricious" as to constitute an independent due process violation).  Petitioner has not alleged,

3    nor does the Court discern, any facts or argument that could establish those circumstances in this

4    case.  *See People v. Rocha*, 32 Cal. App. 5th 352, 359 (Ct. App. 2019) (in deciding whether to

5    strike a firearm enhancement under § 12022.53(h) the court should consider the rights of the

6    defendant, the interests of society, and the defendant's offenses and background).

7         Finally, Petitioner argues on reply that the Court of Appeal's 2019 decision affirming the

8    trial court's decision not to strike the gun use enhancement was "depublished" and therefore "is

9    subject to reconsideration insofar as the [d]epublished opinion in essence no longer exists."  (Doc.

10   No. 16 at 2-3).  This argument is misplaced.  The case cited by Petitioner in support of this

11   argument, *Farmers Ins. Exchange v. Superior Court*, notes that a depublished opinion "must not

12   be cited or relied on by a court or a party in any other action."  218 Cal. App. 4th 96, (Ct. App.

13   2013) (citing Cal. Rules of Court, rule 8.1115(a)).  However, a party's ability to rely on a case in

14   a separate action has no bearing on the "existence" of the of the decision or the binding nature of

15   a judgment on the relevant parties.

16        For all of these reasons, Petitioner's claim is not cognizable on federal habeas review.

17   Accordingly, the appellate court's denial of his claim was not an unreasonable application of

18   clearly established federal law as set forth by the Supreme Court nor based on an unreasonable

19   determination of the facts.  The undersigned recommends that ground one be denied.

20        **B.  Additional Claims**

21        In the Answer, Respondent identifies "varied perfunctory claims" in the Petition.  (Doc.

22   No. 15 at 5).  To the extent discernable, these claims include lack of jurisdiction; "no verified

23   evidence" that Petitioner committed the crimes he was convicted of and "denial" that "any

24   verified evidence exists to the contrary"; and "no verified evidence" Petitioner was not denied

25   effective assistance of counsel.  (*Id*. (citing Doc. No. 1 at 34-36, 47-48)).  Respondent argues

26   these claims were not properly exhausted and "facially fail as a basis for federal habeas relief."

27   (*Id*. at 5-7).  Petitioner appears to restate the claim in his reply; and argues for the first time that

28   Respondent has committed prosecutorial misconduct under state law and that the Court should

1  "consider" "Special Directive 20-14." (Doc. No. 16 at 4-6).

2  First, pursuant to Rule 2(c) of the Rules Governing Section 2254 Cases in United States

3  District Courts, a habeas petition must specify all the grounds for relief available to the petitioner

4  and the facts supporting each ground. Moreover, habeas claims raised for the first time in reply

5  or traverse need not be considered. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir.

6  1994) ("A Traverse is not the proper pleading to raise additional grounds for relief."); *Zamini v.*

7  *Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("district court need not consider arguments raised for

8  the first time in a reply brief"); *Moore v. McVay*, 2023 WL 2541328, at *4 (N.D. Cal. Mar. 15,

9  2023) (district court "has discretion, but is not required to" consider claims raised in the traverse).

10  However, even were the Court to liberally construe these "claims" as properly pled in the

11  Petition, they have not been properly exhausted.

12  A petitioner in state custody who wishes to proceed on a federal petition for a writ of

13  habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). Exhaustion is a

14  "threshold" matter that must be satisfied before the court can consider the merits of each claim.

15  *Day v. McDonough*, 547 U.S. 198, 205 (2006). The exhaustion doctrine is not a jurisdictional

16  issue but is based on comity to permit the state court the initial opportunity to resolve any alleged

17  constitutional deprivations. *See Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Rose v. Lundy*,

18  455 U.S. 509, 518 (1982). To satisfy the exhaustion requirement, petitioner must provide the

19  highest state court with a full and fair opportunity to consider each claim before presenting it to

20  the federal court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Duncan v. Henry*, 513

21  U.S. 364, 365 (1995). Exhaustion is determined on a claim-by-claim basis. *Insyxieng-May v.*

22  *Morgan*, 403 F.3d 657, 667 (9th Cir. 2005). And the burden of proving exhaustion rests with the

23  petitioner. *Darr v. Burford*, 339 U.S. 200, 218 (1950) (overruled in part on other grounds by *Fay*

24  *v. Noia*, 372 U.S. 391 (1963)). A failure to exhaust may only be excused where the petitioner

25  shows that "there is an absence of available State corrective process" or "circumstances exist that

26  render such process ineffective to protect the rights of the applicant." 28 U.S.C.

27  § 2254(b)(1)(B)(i)-(ii).

28  Here, Petitioner does not show that "there is an absence of available State corrective

1   process" or "circumstances exist that render such process ineffective to protect the rights of the

2   applicant." *Id*. As noted by Respondent, the California Supreme Court has not had a fair

3   opportunity to rule on the merits of these claims. (*Cf*. Doc. No. 14-30 (California Supreme Court

4   petition submitted by Roberts raising the same claims made on direct appeal: prosecutorial

5   misconduct, trial court bias, and inadmissibility of evidence in violation of *Miranda*); Doc. No.

6   14-38 (California Supreme Court petition submitted by Roberts claiming trial court abused its

7   discretion when it declined to strike the gun enhancement). Thus, to the extent these additional

8   grounds for relief have been raised in the Petition, none of them have been exhausted as required

9   by 28 U.S.C. § 2254(b)(1). The undersigned recommends these "varied claims" be denied.

10   ### IV.  CERTIFICATE OF APPEALABIILTY

11       A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district

12   court's denial of a petition; he may appeal only in limited circumstances. *See* 28 U.S.C. § 2253;

13   *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 Governing § 2254 Cases requires a

14   district court to issue or deny a certificate of appealability when entering a final order adverse to a

15   petitioner. *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th

16   Cir. 1997). A certificate of appealability will not issue unless a petitioner makes "a substantial

17   showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires

18   the petitioner to show that "jurists of reason could disagree with the district court's resolution of

19   his constitutional claims or that jurists could conclude the issues presented are adequate to

20   deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v.*

21   *McDaniel*, 529 U.S. 473, 484 (2000). Here, petitioner has not made a substantial showing of the

22   denial of a constitutional right. Thus, the undersigned recommends that the court decline to issue

23   a certificate of appealability.

24       Accordingly, it is **RECOMMENDED**:

25       1.  Petitioner be denied all relief on his petition. (Doc. No. 1).

26       2.  Petitioner be denied a certificate of appealability.

27   ////

28   ////

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE TO PARTIES**

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:    September 5, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

17